UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JUSTIN JOSEPH FAIR                                    CIVIL ACTION

VERSUS                                               NO. 09-4196

WARDEN DARREN CROCHET ET AL.                         SECTION "F" (2)


**REPORT AND RECOMMENDATION**

Plaintiff, Justin Joseph Fair, is a prisoner currently incarcerated in the Catahoula

Correctional Center in Harrisonburg, Louisiana.  He filed this complaint pro se and in

forma pauperis pursuant to 42 U.S.C. § 1983 against Warden Darren Crochet of the

Assumption Parish Jail and the Assumption Parish Detention Center Medical Staff.  He

alleges that, while incarcerated in the Assumption Parish Jail in 2009, he was injured in

a fight with another inmate and was thereby exposed to HIV, that he received inadequate

medical care thereafter, and that he was improperly placed in disciplinary lockdown after

the fight.  He seeks monetary compensation for his alleged damages. Record Doc. No. 1

(Complaint).

On September 29, 2009, I conducted a telephone conference in this matter.

Participating were plaintiff pro se and Fred Schroeder, counsel for defendants.  Plaintiff

was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179

(5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff testified that he is currently incarcerated because his parole on a previous conviction for distribution of crack cocaine was revoked on March 9, 2009 and because he is awaiting further proceedings as to new drug charges that led to the revocation of his parole.  He stated that he is currently serving a two-year prison sentence.  He confirmed that his claims in this case all arise from a three-month period of time during which he was incarcerated in the Assumption Parish Jail, from March 5, 2009 through June 8, 2009, when he was transferred to the prison facility where he is currently imprisoned. More specifically, he testified that his claims arise from an incident that occurred on June 2, 2009, about six days before he was transferred out of the Assumption Parish Jail.

Fair testified that, at about 8:45 a.m. on June 2, 2009, he was talking to another inmate while Lashelle Rainey, a correctional officer at the jail, was passing out medications.  He stated that a third inmate, Rickey Bolden, must have had  "something . . . hindering him, and he got hostile with me and he shoved me and we got into a fistfight."  Fair testified that Officer Rainey immediately notified Sergeant Norbert that Bolden and Fair were fighting.  He stated that correctional officers quickly came to the scene, but "they never came in to break up the fight."  Fair said that, instead of entering the cell area to break up the fight, the officers opened another door and had two other inmates, Montego Washington and Gabriel Tillman, break up the fight while the

correctional officers stood outside the door and watched. "I guess they claim they wasn't breaking it up because of the simple fact they knew Rickey Bolden was a carrier of HIV," he said.

Fair testified that his fight with Bolden lasted four to five minutes. He stated that the officers stood on the other side of a glass partition during the fight, "disputing if they wanted to come in or not. That's when one of the CO's opened the door and let Montego Washington . . . come in . . . and grab me" to break up the fight. He said that, although he and Bolden were housed in separate cells, the doors to their cells were open into a hallway, pursuant to the jail's ordinary operations, so that they were able to come into contact with each other.

Asked how the fight began, Fair said "something was hindering Bolden," who was "mad" about a conversation concerning laundry that Fair was having with another inmate. Plaintiff testified that he and Bolden had not had any problems in the past and that the fistfight happened "out of spite, I guess," with no advance warning that it might happen. He described the fight as an unexpected occurrence, and he said that none of the officers would have had any reason to anticipate the fight between Bolden and Fair.

Plaintiff testified that, after the other inmates broke up the altercation and "pulled me out of the fighting area," the correctional officers simply closed a door to separate Fair and Bolden and that the officers never entered the area where the fight occurred.

Asked what injuries he suffered in the fight, Fair testified that his right pinky finger was bleeding.  He said he asked for medical attention but received none, although he said that all of the correctional officers knew that Bolden was HIV-positive.  He stated that the officers merely locked him up after the fight, without writing him up or sending him to the warden.  Asked what the deputies did wrong, he said, "they locked me up without giving me medical attention."  He confirmed that the officers did not cause the fight, but he complained that they also did not intervene to break up the fight themselves, and instead had another inmate do it.  Fair testified:  "This guy (Bolden) has HIV.  I may have come into contact, I don't know.  Still up until this day, I stress, and it grows worser [sic] every day."  He complained that he still has not been checked for HIV exposure as a result of the fight.

As to his medical care claim, plaintiff said he received no medical attention at all at the Assumption Parish jail after the fight. He confirmed that he was shipped from the Assumption Parish jail to another prison six (6) days after the fight, so that he had six (6) days without any medical attention from defendants.

He testified that he was in disciplinary lockup, which he described as "solitary confinement," for the six (6) days following his fight with Bolden before he was transferred to another prison.  Fair described lockup as separation from his former cell, so that he and Bolden could not come into contact with each other again.  He said he was

kept in the lockup cell with Washington, the inmate who had broken up his fight with Bolden. He stated that he was not permitted to leave his cell during those six days, except to get his food tray and to take showers. He said he was not allowed to have writing materials, to send or receive mail, or to call his family during the six-day period. He complained that, during this period, he received no medical attention, no writeup, no talks with the warden, and that "I was being ignored . . . for the simple fact that this guy has HIV virus. Each and every one of them knew that. I think that was their reason for not coming in to break up the fight."

Fair testified that, on June 8, 2009, six (6) days after the fight, he was transported from Assumption Parish to a new facility, where he said he has received no medical attention. He confirmed, however, that he has never requested any medical attention at his new jail. He also testified that, when he was given his initial medical screening at the new facility, he told prison officials that he was not allergic to anything and that he has asthma, but that he said nothing to anyone at the new facility about any exposure or fear of exposure to HIV resulting from his fight with Bolden. He testified that he did not mention anything about it because he was under stress and the exposure occurred "somewhere else." He said that he has received no medical attention and has requested none since his arrival at his present place of incarceration from Assumption Parish in June 2009.

He testified that his injured pinky finger "healed up." He stated that he currently has a staph infection, which had been treated at the Assumption Parish Jail in April 2009, before his fight with Bolden. He said the infection had become noticeable "just yesterday," so that he has not yet requested medical attention for it. He confirmed that his primary injury as a result of the events at Assumption Parish is the stress and worry he continues to experience concerning his possible HIV exposure. He said he believes that HIV testing is not available at his present place of incarceration.

Plaintiff's medical records from the Assumption Parish jail contain no records of any treatment for any injury on June 2, 2009, or for the six (6) days thereafter, before his transfer. The only medical records reflect that he was treated for an infected area on his right thigh on April 13 and 14, 2009. Record Doc. No. 18.

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. <u>Spears</u>, 766 F.2d at 180. "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow

proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[1]

## II.    FAILURE TO PROTECT

Fair alleges that defendants failed to protect him from harm.  Specifically, he alleges that no correctional officer intervened to break up the fight between him and Bolden, but that they only sent other inmates to break it up.

Fair was a convicted inmate whose parole had been revoked at the time of the events on which he bases his claims, so that the Eighth Amendment standard applies. Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994); <u>Hare v. City of Corinth</u>, 74 F.3d 633, 650 (5th Cir. 1996).  The Eighth Amendment standard enunciated in <u>Farmer</u> applies to a

---

[1] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 834; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. The deliberate indifference standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (additional citations and footnote omitted) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291. Whether a prison official had the requisite knowledge of a substantial risk is a question of fact. Farmer, 511 U.S. at 837; Newton, 133 F.3d at 308.

> [If a] plaintiff presents evidence showing that a substantial risk of . . . attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

<u>Farmer</u>, 511 U.S. at 842-43.  Thus, in <u>Adames v. Perez</u>, 331 F.3d 508 (5th Cir. 2003), the United States Court of Appeals for the Fifth Circuit vacated and remanded a jury verdict in favor of an inmate, holding that evidence of <u>isolated</u> previous attacks was insufficient to show deliberate indifference to an inmate's safety or to support a jury's verdict that prison officials failed to protect the inmate.

In this case, it cannot be concluded that prison officials unconstitutionally exposed plaintiff to a substantial risk of serious harm because his own testimony confirms that neither prison officials nor Fair himself had any reason to believe or even suspect that the inmate who allegedly attacked him posed any danger to Fair under these particular circumstances.  There was no history known to defendants of prior incidents between Fair and Bolden.  The fistfight between them occurred suddenly and without warning.  As Fair  testified, prison officials had no reason to suspect that the inmate who attacked him posed any known or anticipated threat to him before the assault, just as he himself had no reason to believe that Bolden posed any threat to him.

Fair may be complaining that the attack against him by the other inmate, Bolden, lasted longer because no correctional officers intervened to break it up themselves, but they sent other inmates to break it up.  However, plaintiff's testimony in this regard, even if accepted as true in its entirety for present purposes, does not rise to the level of deliberate indifference to a known risk of substantial harm required to establish a

constitutional violation. He testified that Officer Rainey immediately notified Sgt. Norbert that Bolden and Fair were fighting, and that correctional officers quickly came to the scene. He said that the officers opened another door and had two other inmates break up the fight while the officers stood outside the door and watched. Fair testified that his fight with Bolden lasted only four to five minutes and that, once the other inmates broke the two of them apart, he was separated from Bolden immediately and for the remainder of his six (6) days at the Assumption Parish jail. Thus, plaintiff's own testimony confirms that prison officials acted promptly and effectively to stop the fight within four to five minutes and that they kept watch the entire time while the other inmates broke up the fight at the officers' direction. Under these circumstances, it cannot be said that defendants knew of and disregarded an excessive risk to Fair's health or safety.

Prison officials (and even Fair himself) had no reason to suspect that Fair was about to be attacked, and they acted quickly and effectively to stop the fight. Therefore, prison officials cannot be liable for failing to protect plaintiff because no finding of deliberate indifference required to state a constitutional claim is possible. Accordingly, plaintiff's Section 1983 claim of failure to protect from harm by other inmates must be dismissed.

III.    MEDICAL CARE

Fair was a convicted prisoner at all relevant times about which he complains.  In Estelle, 429 U.S. at 104, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  The same standards concerning deliberate indifference discussed above also apply to this claim.

Thus, "deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.  The Farmer definition applies to Eighth Amendment medical claims.  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

An inmate must satisfy the same objective and subjective requirements described above to demonstrate that a prison official has violated the Eighth Amendment with regard to plaintiff's medical care.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (quotation omitted).

Further, plaintiff must establish that the defendant possessed a culpable state of mind.  Id.  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm."  Mace, 333 F.3d at 626.

In this case, Fair's allegations negate any inference that defendants acted with deliberate indifference to his serious medical needs.  Initially, it cannot be concluded that the conditions he described, including a bleeding finger and four to five minutes of exposure to another inmate who was allegedly HIV-positive, presented a serious medical need that posed a substantial risk of harm during Fair's incarceration at the jail.  These complaints do not rise to the level of a serious medical need for purposes of constitutional analysis.  See Vaughn v. City of Lebanon, 18 Fed. Appx. 252, 2001 WL 966279, at *20 (6th Cir. 2001) (no serious medical need when treating physicians analogized plaintiff's pepper-spray-related symptoms to a case of poison ivy and when his cuts, bruises and abrasions from struggle were visible but not permanent); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (swollen, bleeding wrists from handcuffs that were too tight do not constitute serious medical need); Martin v. Tyson, 845 F.2d

1451, 1457-58 (7th Cir. 1988) (toothache and ear infection not sufficiently serious); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (sliver of glass in detainee's palm and minor cuts and bruises were not serious injury); Willacy v. County of Brevard, No. 04-cv-1666-Orl-18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (cuts, lacerations, bruising and some swelling, for which plaintiff received band-aids from the jail nurse, "simply fail to rise to the level of a serious medical injury for Eighth Amendment purposes"); cf. Gray v. Sheahan, No. 93 C 6646, 1995 WL 106333, at *6 (N.D. Ill. Mar. 7, 1995) (plaintiff stated a claim for deliberate indifference to serious medical needs by alleging that defendants housed him with a cellmate who repeatedly bit plaintiff, when defendants knew that the cellmate was HIV-positive and had a history of unprovoked violence); Kenyon v. Cheshire County Jail Admin., No. 92-515-M, 1994 WL 529925, at *4 (D.N.H. Sept. 22, 1994) ("If prison officials know . . . that an inmate or detainee is infected with the AIDS virus, then requiring another inmate or detainee to share a razor with that individual would likely rise to the level of deliberate indifference to a serious medical need–the need to avoid known serious risks to health and life.") (emphasis added).

Similarly, plaintiff's stress, worry and fear of contracting HIV as a result of his very brief contact with an allegedly HIV-positive inmate and his request to be tested for HIV do not state serious medical needs for purposes of constitutional analysis. Here, as

in Kenyon, Fair's "allegations implicitly suggest an extended series of facts which might have given rise to exposure:  i.e. if [Bolden] had in fact been exposed to and carried the AIDS virus, and if" Bolden's skin was cut during the fight, and if Bolden's blood contacted Fair in a way capable of transmitting the virus, "then plaintiff might have been exposed to a serious, indeed fatal, disease."  Id. at *5.   These allegations amount only to an assertion that Fair "might have been exposed to AIDS," which is insufficient to state a claim for relief because "'[a]n unsubstantiated fear of contracting a serious disease is not a basis for a constitutional claim' upon which damages can be awarded."  Id. (quoting Quarles v. De La Cuesta, No. 92-5928, 1993 WL 86460, at *1 (E.D. Pa. Mar. 23, 1993)) (citing Glick v. Henderson, 855 F.2d 536, 539 (8th Cir. 1988); Goss v. Sullivan, 839 F. Supp. 1532 (D. Wyo. 1993); Deutsch v. Federal Bureau of Prisons, 737 F. Supp. 261, 267 (S.D.N.Y. 1990), aff'd, 930 F.2d 909 (2d Cir. 1991)); see also Marcussen v. Brandstat, 836 F. Supp. 624, 628 (N.D. Iowa 1993) (no serious medical need when plaintiff alleged mental stress from the fear of contracting HIV, caused by sharing a cell with an allegedly HIV-positive inmate who used plaintiff's toiletries, including his razor, which could cause blood-to-blood transmission of the virus); Johnson v. United States, 816 F. Supp. 1519, 1521, 1524 (N.D. Ala. 1993) (no serious medical needs when plaintiff alleged that he shared a cell with an inmate who died of AIDS; that his cellmate tampered with his toothbrush, toothpaste, and razor blade; that he observed

his cellmate's blood on their sink, toilet and towels on several occasions; and that, during the last few days before his cellmate's death, he was forced to feed and "sanitize" cellmate).

Furthermore, plaintiff's testimony that he was exposed to an HIV-positive inmate for four to five minutes fails to allege any actual physical injury from that exposure. Although Fair stated that he came in contact with Bolden during the fight, he conceded that he did not know whether he had actually been exposed to the virus. He did <u>not</u> say that he came into contact with Bolden's blood in a way that could transmit the virus. <u>See</u> <u>Stedmans Medical Dictionary</u>, available on Westlaw at STEDMANS 10860 (27th ed. 2000) ("HIV is transmitted from person to person in cell-rich body fluids (notably blood and semen) through sexual contact, sharing of contaminated needles (as by IV drug abusers), or other contact with contaminated blood (as in accidental needle sticks among health care workers)."). Fair also testified that he has not suffered any health problems as a result of his exposure, if any, other than stress and worry.

To state a claim under 42 U.S.C. § 1983, plaintiff must allege an actual injury caused by the defendants' acts. <u>See</u> <u>Brock v. Sparkman</u>, 101 Fed. Appx. 430, 2004 WL 1368923, at *1 (5th Cir. 2004) (citing <u>Memphis Cmty. Sch. Dist. v. Stachura</u>, 477 U.S. 299, 307 (1986)) (prisoner who had bumps and bruises from repeatedly hitting his head on bunk bed had no cognizable injury); <u>Jackson v. Culbertson</u>, 984 F.2d 699, 700 (5th

Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no injury); <u>Oliver v. Collins</u>, 904 F.2d 278, 281 (5th Cir. 1990) (claims properly dismissed when plaintiff alleged insufficient causal connection between defendants' conduct and the claimed assault, and when plaintiff did not allege constitutional harm); <u>Auster Oil & Gas, Inc. v. Stream</u>, 835 F.2d 597, 602 (5th Cir. 1988) (citing <u>Memphis Cmty. Sch. Dist.</u>, 477 U.S. at 307) ("[Section] 1983 is designed to compensate persons for actual injuries caused by the deprivation of constitutional rights."); <u>Jefferson v. City of Hazelhurst</u>, 936 F. Supp. 382, 386 (S.D. Miss. 1995) (To state a cause of action under Section 1983, plaintiff must plead "a direct causal connection, . . . without intervening factors, between the deprivation and some injury to plaintiff.")

More importantly, the Prison Litigation Reform Act of 1996 included the following requirement in 42 U.S.C. § 1997e(e): "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury." <u>See</u> <u>Siglar v. Hightower</u>, 112 F.3d 191, 193-94 (5th Cir. 1997) (discussing this requirement). For purposes of this statute, the physical injury must be more than de minimis. In the instant case, Fair suffered only a bleeding finger that healed without any complications. As in <u>Siglar</u>, where "Siglar's alleged injury–a sore, bruised ear lasting for three days–was de minimis," Fair's injury was de minimis and is insufficient "to support a claim for

emotional or mental suffering." <u>Id.</u> at 193-94.  Because Fair suffered no physical injury or violation of his constitutional rights of any kind as a result of the contact with the allegedly HIV-positive inmate, he fails to state a cognizable Section 1983 claim.

Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

## IV.    DISCIPLINARY LOCKDOWN

Plaintiff's complaint that he was placed in "solitary confinement" without justification or process for six (6) days following his fight with Bolden fails to establish any constitutional violation. Fair has no constitutional right to a particular status or classification within any prison.

The classification of inmates is an administrative function of the prison.  <u>Jones v. Diamond</u>, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc).[2]  Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 547-48 (1979); <u>Smith v. Bingham</u>, 914 F.2d 740, 742 (5th Cir. 1990).  "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish

---

[2]<u>Overruled on other grounds by</u> <u>International Woodworkers of Am. v. Champion Int'l Corp.</u>, 790 F.2d 1174 (5th Cir. 1986), <u>aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437 (1987).

inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt v. Helms, 459 U.S. 460, 472 (1983)). "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law." Woods v. Edwards, 51 F.3d 577, 581-82 (5th Cir. 1995) (citation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001). The Fifth Circuit "has continued to hold post-Sandin that an inmate has no protectable liberty interest in his classification." Wilkerson v. Stalder, 329 F.3d 431, 435-36 (5th Cir. 2003) (citing Sandin v. Conner, 515 U.S. 472 (1995)).

Fair described lockup as separation from his former cell so that he and Bolden could not come into contact with each other again. His complaint concerning improper classification at the jail resulting in his placement in lockdown is not an abuse of the discretion the law assigns to prison officials. It is a discretionary function of Fair's jailers, based on legitimate administrative considerations, exactly the kind of discretionary administrative decision with which this court should not interfere. No

21

violation of Fair's federal constitutional rights has occurred under the classification circumstances described in his complaint.

In addition, the conditions of Fair's confinement in lockdown, including the denial of privileges described in his testimony, do not establish any violation of his constitutional rights. In <u>Sandin</u>, the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other denial of prison privileges begins with determining whether a constitutionally protected liberty interest exists. <u>Sandin</u>, 515 U.S. at 481-83. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." <u>Hewitt</u>, 459 U.S. at 466. In <u>Sandin</u>, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484 (citations omitted). Thus, in <u>Sandin</u>, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), and <u>Hewitt</u>, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." <u>Madison v. Parker</u>, 104 F.3d 765, 767 (5th Cir. 1997). The <u>Madison</u> court held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." <u>Id.</u> at 768; <u>accord</u> <u>Dixon v. Hastings</u>, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); <u>Malchi v. Thaler</u>, 211 F.3d 953, 957-58 (5th Cir. 2000). The Fifth Circuit further held in <u>Madison</u> that such restrictions "do not represent the type of atypical, significant deprivation in which a state might create a liberty interest." <u>Madison</u>, 104 F.3d at 768. Examples of prison hardships that <u>would</u> qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction. <u>Sandin</u>, 515 U.S. at 484.

In <u>Wolff</u>, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner need not be afforded "the full panoply of rights" provided in criminal proceedings. <u>Wolff</u>, 418 U.S. at 556. Nevertheless, the <u>Wolff</u> Court held that prison officials must afford the prisoner <u>some</u> due process in

disciplinary proceedings before imposing punishment, including notice of the violation,

a hearing and some opportunity to present evidence on the prisoner's behalf.  Id.

In the instant case, plaintiff's testimony establishes that his loss of privileges and

confinement to six (6) days in lockdown are not being imposed as punishment for any

alleged disciplinary violations, but as a classification measure based on the need to

separate him from Bolden, who allegedly had attacked Fair.  Even if these restrictions

were imposed as punishments, however, none of these punishments constitute such an

"atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life" that particular forms of process were required.  Sandin, 515 U.S. at 484; see

Dixon, 2005 WL 17382, at *1 ("loss of commissary privileges, cell restriction, placement

in administrative segregation, and extended work schedule were not atypical punishments

requiring due process protections"); Payne v. Dretke, 80 Fed. Appx. 314, 2003 WL

22367564, at *1 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary

punishment] . . . do not implicate a liberty interest under the Due Process Clause");

Madison, 104 F.3d at 768 (same).  No claim of violation of due process rights cognizable

under Section 1983 can be stated as to these matters.

Fair alleges that prison officials provided him with no reason or process in placing

him in solitary confinement for six (6) days.  However, Sandin makes clear that no

particular process is required, unless something more than a mere change in condition

of confinement occurs.  See Madison, 104 F.3d at 768.  On the contrary, Fair's own testimony establishes that his stay in lockdown deprived him only of certain prison privileges, such as restricting his mail, telephone use and writing materials, which were mere changes in the conditions of his confinement that lasted only for six days.  He has failed to make any showing that the time spent in solitary confinement extended his total time in prison or otherwise resulted in "atypical, significant" hardships. Madison, 104 F.3d at 768; see also Sandin, 515 U.S. at 484.  Thus, Fair fails to state a claim that his due process rights were violated in connection with his six-day lockdown and loss of privileges.

V.    IMPROPER DEFENDANTS

Fair makes no claim that Warden Crochet was personally involved in any of the alleged acts or omissions upon which his claims are based.  "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).  To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing

the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Sanders, 950 F.2d at 1159-60 (5th Cir. 1992). In the instant action, plaintiff has failed to establish either of these two criteria.

In addition, Fair has named "the Assumption Parish Detention Center Medical Staff" as a defendant. However, a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not "persons" for purposes of suit under Section 1983, as the statute and case law define that term. Cage v. Kent County Corr. Facility, 113 F.3d 1234, 1997 WL 225647, at *1 (6th Cir. 1997); United States ex rel. Arzonica v. Scheipe, 474 F.2d 720, 721 (3d Cir. 1973); Johnson v. LCDC Med. Staff, No. 4:09-cv-13, 2009 WL 1256906, at *2 (E.D. Tenn. Apr. 29, 2009); Holifield v. Mobile County Sheriff's Dep't, No. 07-0321-CG-C, 2008 WL 2246961, at *5 (S.D. Ala. May 29, 2008); Cullen v. DuPage County, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Corr. Facility Admin., No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); Sponsler v. Berks County Prison, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. 1995); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993). Thus, Fair can assert no claim against the Assumption Parish Detention Center Medical Staff under Section 1983.

VI.     AMENDMENT WOULD BE FUTILE

Finally, even if Fair were provided an opportunity to amend his complaint to add additional defendants, such as individual correctional officers, doctors, nurses, or other individual medical care providers, such an amendment would be impermissibly futile. The facts on which he bases his claims, as discussed above, establish that any claims he might assert under Section 1983 are without merit because his constitutional rights were not violated in any way.  Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993).

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Fed. R. Civ. P.

72(a); <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___4th___ day of December, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE